# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7685 | **DATE** | 10/22/2001 |
| **CASE TITLE** | | Carp PenFd v. FVE & Assc Inc | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' Motion to Strike Affirmative Defenses and Counter-Complaint (doc. #12-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' Motion to Strike the Affirmative Defenses is GRANTED; Plaintiffs' Motion to Strike the Counter-Complaint is DENIED (doc. #12-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | OCT 2 5 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | FOR DOCKETING OCT 24 PM 5: 37 Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRUSTEES OF THE WILL COUNTY LOCAL )
174 CARPENTERS PENSION TRUST FUND )
and WILL COUNTY LOCAL 174 )
SUPPLEMENTAL PENSION FUND, )
    Plaintiffs, )
)
                                                        )    CASE NO. 00 C 7685
v. )
                                                        )    JUDGE WILLIAM J. HIBBLER
F.V.E. & ASSOCIATES, INC. )
d/b/a FOX VALLEY EXTERIORS, INC., )
    Defendants. )

DOCKETED
OCT 2 5 2001

## MEMORANDUM AND ORDER

The Court has before it Trustees of the Will County Local 174 Carpenters Pension Trust Fund and Will County Local 174 Supplemental Pension Fund's ("Plaintiffs") Motion to Strike F.V.E. & Associates, Inc., d/b/a Fox Valley Exteriors, Inc.'s ("Defendant") Affirmative Defenses One through Six and Counter-Complaint. Plaintiffs claim defense number one must fail because it does not fall within any of the recognized categories of defense to an ERISA action, per 29 U.S.C. § 1145, and defenses numbered two through six must fail based on the reading of the clear language of the collective bargaining agreement and trust documents. Plaintiffs further claim Defendant's counter-complaint must fail under Rule 12(f) of the Federal Rules of Civil Procedure. The Court agrees with Plaintiffs' claims regarding the affirmative defenses and disagrees with the claim regarding the counter-complaint. Accordingly, the Court GRANTS the Motion to Strike the Affirmative Defenses and DENIES the Motion to Strike the Counter-Complaint.

1

## Background

This case arises out of a collective bargaining agreement between Defendant and the local carpenters' union to provide pension benefits to its union members. Under the agreement, Defendant contributes to local pension funds on behalf of employed union members. These local pension funds have reciprocity agreements with Plaintiffs that allow funds to be transferred between the funds to cover workers in different counties or regions. The dispute arises out of Plaintiffs' claim that Defendant breached this agreement by failing to contribute to Plaintiff funds from May 1, 1997 through August 31, 2000. Defendant denies the breach, on the grounds contributions were made to other pension funds (i.e. Trustees of the Will County Carpenters Local 174 Health & Welfare Fund, Chicago & Northeast Illinois District Council of Carpenters and Carpenters Local Union 174, and Carpenters Fringe Benefit Funds of Illinois and Michael T. Kucharski as administration manager (collectively referred to here as "Third-Party Defendants")) which have reciprocity agreements with Plaintiffs. Defendant claims these contributions fulfill its obligation to Plaintiffs and raises numerous affirmative defenses indicating the reciprocity agreement between Plaintiffs and Third-Party Defendants obviates the breach of contract claim. Defendant also initiated a Third-Party Complaint against the Third-Party Defendants to recover any erroneous overpayments. Plaintiff has moved to strike the affirmative defenses and "counter-complaint."

## Standard of Review

"Affirmative defenses are pleadings and, as such, are subject to the pleading requirements of the Federal Rules of Civil Procedure." *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D. Ill. 2000). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings'", because motions to strike affirmative defenses are generally disfavored. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991)(quoting *Heller Financial v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

## Motion to Strike the Affirmative Defenses

### *Affirmative Defense 1: Failure to State a Claim Upon Which Relief Can be Granted*

> "Plaintiffs' Complaint does not state a claim upon which relief can be granted."

Plaintiffs withdrew this affirmative defense in their Response, so there is no need for the Court to address this issue.

### *Affirmative Defense 2: Relief for Overpayment*

> "To the extent any money is due, which Defendant denies, Defendant is entitled to relief for overpayment of welfare funds."

Defendants have submitted a Third-Party Complaint against Third-Party Defendants to obtain overpayment for contributions to the pension fund. This Third-Party Complaint is nearly identical to the Counter-Complaint referenced by Defendants in *Trustees of the Will County Local 174 v. K&I Construction, Inc.*, 00 C 7684 (Judge Pallmeyer, N.D. Ill. August 28, 2001). In that case, Judge Pallmeyer struck the Affirmative Defense of Relief for Overpayment as being "redundant of K&I's

3

counterclaim." Defendants' attempt to distinguish *Trustees* from the case at hand is admirable, but unpersuasive. Whether offered as a Counter-Complaint or a Third-Party Complaint, the fact remains the external complaint already addresses the issue of overpayment. The Affirmative Defense submitted by Defendants here must therefore fail for the same reason as the Counter-Complaint in *Trustees* : it is "redundant of" an existing submitted Complaint.

### Affirmative Defense 3: Estoppel

> "Plaintiffs are estopped from asserting claims since Plaintiffs have permitted practice of specialty trade employers such as Defendant to pay all contributions to either the Chicago Funds or Illinois Valley Funds, and those funds under the reciprocal agreements between such other funds; and Plaintiffs transfer money or credits; thus, no contributions are due."

Despite lack of clear agreement among the courts as to the correct and proper definition of estoppel in the ERISA context, courts do seem to agree "four elements must always be present: (1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by the plaintiff, (4) to her detriment." *Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*, 207 F.3d 876, 883 (7th Cir. 2000)(citing *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579 (7th Cir. 1999)); *see Coker*, 165 F.3d at 585 (restating and clarifying the use of estoppel under ERISA ("It is not easy to apply estoppel rules to ERISA cases.")).

In its Response, Defendant points to the reciprocity agreements between Plaintiffs and the various other trust funds and the Pension Plan as written documents which fulfill these estoppel requirements.

4

Defendant claims Plaintiffs' long-standing use of the reciprocity agreements and the language in the Pension Plan are "knowing representations" under this standard, and that Defendant reasonably relied on these various documents to his detriment because he contributed to the "wrong" funds for eight years and was never told by Plaintiff that these contributions were erroneous.

However, Defendant admits to not being a party to either the agreements or the Pension Plan. As such, Defendant cannot claim any written representation was knowingly made *to him*. Third-party awareness of these documents does not satisfy the knowing representation standard. *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 139 F.Supp.2d 976, 985-86 (C.D. Ill. 2001); *see also Coker*, 165 F.3d at 585 (questions about misrepresentation cannot be resolved simply by interpreting an existing plan or a collective bargaining agreement). In the absence of a knowing, written representation, there can be no reliance. Therefore, Defendant cannot establish the elements of estoppel and cannot assert that affirmative defense.

### Affirmative Defense 4: Laches

> "Plaintiffs are guilty of laches for the same
> reasons as set forth in Affirmative Defense No. 3."

The law is unclear as to whether laches can be applied to ERISA actions, with different courts reaching different decisions. *See UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509 (7th Cir. 1993)(considers laches in a case of delinquent contributions); *Martin v. Consultants & Admins., Inc.*, 966 F.2d 1078, 1091 (7th Cir. 1992)("there is authority for applying laches in cases

governed by a statute of limitations"); *Moriarty v. Glueckert Funeral Home, Ltd.*, 967 F.Supp. 1038 (N.D. Ill. 1997)(laches unavailable because of no lack of diligence); *Moriarty v. Glueckert Funeral Home, Ltd.*, 925 F.Supp. 1389 (N.D. Ill. 1996)(laches unavailable due to failure to prove unreasonable delay).

Defendant cites a recent decision of the U.S. District Court for the Central District of Illinois, in which the court determined the weight of precedent allows a wide-ranging application of laches to ERISA cases. *Gorman Bros.*, 139 F.Supp.2d at 986. That court reached its conclusion through a broad reading of decisions of the various Circuit Courts of Appeals, most notably the Seventh. *See Martin*, 966 F.2d at 1091. This Court respectfully disagrees with such an overextension of the principle of laches and an overly broad reading of the prior decisions; the Court believes that holding does not warrant the application Defendant ascribes to it here. While the Seventh Circuit in *Martin* does concede, as indicated above, there is some authority for applying laches, the decision also admits "courts are often hesitant to apply laches where a plaintiff has sued within the time period expressly provided by the applicable statute." *Id.* at 1090. In this case, Defendant admits ERISA contains a ten-year statute of limitations in suits for delinquent contributions to pension plans. 29 U.S.C. § 1145. As such, the concerns indicated in *Martin* prevent the Court from accepting Defendant's overextension of the principle of laches here.

However, even if the Court assumed for the sake of argument the defense of laches might be be available here, the facts of this case bar its application and remove it as a possible defense. "In order to

establish laches, the party asserting the doctrine must show (1) unreasonable delay and (2) harm or prejudice to the party against which laches has been asserted." *Gorman Bros.*, 139 F.Supp.2d at 987 (citing *Martin v. Consultants & Admins., Inc.*, 966 F.2d 1078, 1091 (7th Cir. 1992)); see also *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). There was no "unreasonable delay" in this case, because Plaintiffs filed suit promptly after the audits revealed the discrepancy. The seven-year period which Defendant cites as evidence of unreasonable delay is not the relevant timeframe here. The relevant timeframe is August 30, 2001 (i.e. the closing date of the audit of Defendant's fund contributions) to December 7, 2001 (i.e. the date Plaintiffs' complaint was filed with the Court). Upon completion of the audit and identification of the Defendant's delinquent contributions, Plaintiffs brought suit within months. There is surely no unreasonable delay given that, once the missing contributions were identified, Plaintiffs quickly took action. See also *F.D.I.C. v. Knostman*, 996 F.2d 1133, 1139 (7th Cir. 1992); *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir. 1988); *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985) ("(L)aches is a question of degree."). Further, "if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Hot Wax, Inc.*, 191 F.3d at 824 (citations omitted). Here, Plaintiffs pressed their claim in a timely manner and Defendant has failed to allege this relatively minimal time period between discovery of the alleged misconduct and the appropriate response extraordinarily

7

injured Defendant at the substantial level of harm required to bar the claim. For instance, Defendant has not alleged it entered into any new collective bargaining agreements during this thirteen week period. Thus, even if laches is available in ERISA cases, the affirmative defense is inapplicable on the facts to Defendant here.

### Affirmative Defense 5: Waiver of Additional Contributions

> "Plaintiffs have waived additional contributions for the same reasons as set forth in Affirmative Defense No. 3."

Defendant claims the reciprocity agreements between Plaintiffs and the other funds are the factual equivalent of a waiver of the right to receive contributions directly from Defendant. However, as stated above under the Court's analysis of defense number three (estoppel), Defendant was not a party to these agreements, and therefore was unable to reasonably rely on them. Thus, the Court need not consider Defendant's submitted definition of "waiver" or address whether a waiver actually existed. This defense must therefore also fail, for the reasons stated previously.

### Motion to Strike the Counter-Complaint

Plaintiffs also moved to strike the Counter-Complaint under Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) states that, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (2001).

First, Defendant has not filed a Counter-Complaint in this case, so there is no such document for the Court to strike. Further, even if Plaintiffs are referring to Defendants' Third-Party Complaint, the Motion

to Strike must be denied; Plaintiff simply states the complaint must be stricken and fails to provide the Court with any reason why the complaint should be stricken here. Without addressing the factual merits of the Third-Party Complaint, the Court therefore concludes Defendants have stated a claim for set-off which meets the pleading requirement. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160, 1161 (1993)(citing *Conley v. Gibson*, 355 U.S. 41 (1957)). Under the liberal notice pleading standards, "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all that the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. The Court must therefore DENY the Motion to Strike the Counter-Complaint.

## CONCLUSION

For the above reasons, Plaintiffs' Motion to Strike the Affirmative Defenses is GRANTED, while the Motion to Strike the Counter-Complaint is DENIED.

**IT IS SO ORDERED.**

DATED: October 22, 2001

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

9